GERTRUDE A. WELCH, Respondent, *v.* ANNA P. ENRIGHT, Doing Business under the Assumed Name and Style of THE ENRIGHT SHOP, Appellant.

FREDERICK P. WELCH, Respondent, *v.* ANNA P. ENRIGHT, Doing Business under the Assumed Name and Style of THE ENRIGHT SHOP, Appellant.

Third Department, November 1, 1939.

*Hinman, Howard & Kattell* [*C. Addison Keeler* of counsel], for the appellant.

*Theodore Levene* [*Daniel J. McAvoy* of counsel], for the respondents.

HILL, P. J. Defendant appeals from two judgments, one in favor of plaintiff Gertrude A. Welch for personal injuries alleged to have been sustained through the negligence of appellant's employee, and the other in favor of plaintiff Frederick P. Welch, the husband, for expenses, medical services and loss of consortium.

Defendant conducts a retail store in Binghamton, N. Y., for the sale of women's garments and undergarments. · Plaintiff received her injuries while being fitted to a girdle or corselet by one of defendant's employees. There is evidence that she suffered a slight dislocation between the first cervical vertebra and the

skull, also that a small chip of bone was broken off from the inner margin of the right side of that vertebra. She suffered much pain, was in bed for ten days, receiving treatment designated " head traction " which kept the neck muscles and ligaments at " hyper extension." Afterwards she was placed in a cast that extended from her waist upward, covered part of her chin and the back of her head. This she continued to wear from May until into December.

It is plaintiff's version, which does not differ materially from the defendant's, that upon entering the store she inquired for the desired garment, was shown into a fitting room where she disrobed and while removing her shoes was told that it was not necessary to do so, as the fitting would be over the head. It appears from the evidence that a corselet is a tubular garment of elastic fabric designed to mold a woman's form in accordance with the current requirements of fashion. It necessarily fits as snugly as a reasonable degree of comfort (dependent on the fortitude of the wearer) permits.

The plaintiff says that she tried two garments, neither of which fitted snugly. The injury was received while attempting to fit the third. She describes the process of fitting, " She [the clerk] * * * told me to reach my arms straight forward * * *. I put them both forward and she slipped the garment over my arms until she got the whole thing over my wrists, then she told me to raise my arms straight over my head, so I raised them up and she pulled the garment down." Describing the experience with the third garment she says that the clerk " slipped it on the same way on my hands and then I raised them up and she started to pull it down. This one I noticed was a little tighter than the others and as she started to pull it down, I got a cramp in the back of my neck. I said ' Oh this is hurting ' I did. ' Do you think you are going to be able to get it on? ' She said ' it will go on all right.' She took hold of the bottom of it with both hands like that and she continued to pull and yank it and tug on it to pull it down. Then I got one awful just like a kink in the back of my neck and I said ' Oh, wait a minute, you will just have to remove it ' so I bent over and she removed the garment. Q. Prior to that, you said you told her she was hurting you? A. Yes I did. I felt very sickish and I had a cramp sort of in the back of my neck there. It seemed too tight." Plaintiff's pain continued and she was taken to a hospital on the same day. An X-ray disclosed the condition which I have mentioned.

A woman who had been engaged for several years as a corsetiere qualified as an expert in the fitting of these garments. She describes the proper method: " The customer steps into the garment and

pulls it up with the assistance of the corsetiere, the customer holding the front of the garment and pulling it up as the corsetiere assists her from the back, pulling it well up over the hips to the waist line. Then the customer puts her arm in the ribbon strap and the top of the garment is completed." She further stated that the method she described was desirable in distinction to putting the garment on over the head " because the garment is made of a tube of elastic and putting the garment over the head would be very uncomfortable for the customer and very unnecessary to do and besides it might cause serious injury." The latter part of the answer was stricken out as a conclusion.

A manufacturer of corsets described the structure of the corselet and the proper means of fitting. " The two-way stretch is made out of elastic yarns running in the nature of a wrap around and the thread that runs directly up and down is made out of fiber and elastic, generally fiber and elastic, giving it the elasticity both ways." He says that the garment was first sold in 1930 or 1931 and that he was acquainted with the usual and customary manner of fitting the garment, which he describes " stepping into the garment with both feet and pulling it up on the body, * * * up over the thighs." The reason for this method he describes " for comfort because it was so designed to fit by stepping into it, then possibly the elimination of any injuries that might be caused — " (the court struck out the possibility).

It was competent to prove the general custom and manner of fitting corselets, and the jury was properly permitted to give it consideration in connection with all the other facts. It is common knowledge that in the head, neck and shoulders are many joints or points of articulation held in place rigidly or loosely dependent upon the ease with which articulation is to be accomplished, by myriads of muscles, tendons and ligaments, and that their dislocation or displacement is attended by the most serious conditions. The clerk pulled and " yanked " on this garment within which plaintiff's arms were pinioned beside her head and neck. A wrestler uses a neck hold like the Nelson or half-Nelson with care. A corsetiere exerting force that affects the neck, head and shoulders should be required to exercise reasonable care. The employer extended an assurance and guaranty that reasonable care would be used in fittings. The jury was informed fully as to the transaction and the results. It was to draw the inference of care or negligence. Conditions under which liability may arise are increasing. (*Pearlman* v. *Garrod Shoe Co.*, 276 N. Y. 172.)

The judgments and orders should be affirmed.

CRAPSER, HEFFERNAN, SCHENCK and FOSTER, JJ., concur.

Judgments and orders affirmed, with costs in one action.